**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**MARCUS HAHN,**

      **Petitioner,**

**vs.**

                                    **Case No.**      **1:21-cv-00455 WJ/JFR**

**UNITED STATES OF AMERICA,**                         **1:00-cr-01344 JAP/JFR**

      **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**
**REGARDING PETITIONER MARCUS HAHN'S MOTION UNDER 28 U.S.C. § 2255**
**TO VACATE, SET ASIDE, OR CORRECT SENTENCE[1]**

THIS MATTER comes before the Court on Petitioner Marcus Hahn's "Amended and

Supplemented Memorandum of Points and Authorities in Support of Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence," filed June 14, 2021.  CV Docs. 6, 9.[2]  The

United States has responded, and Petitioner has filed his reply as well as his supplement.  Docs.

15, 20, 21.

After reviewing the briefing, as well as the underlying files and records of the case, I can

hold an evidentiary hearing to "determine the issues and make findings of fact…" if I have any

question as to whether the prisoner is entitled to relief.  28 U.S.C. § 2255(b) ("Unless the motion

and the files and records of the case conclusively show that the prisoner is entitled to no

relief…").  When reviewing the record in this case, including Petitioner's Motion and United

States' response as well as all the documents in the underlying criminal case, I am mindful that I

---

[1] The presiding judge referred this matter to the undersigned by Order of Reference "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case."  *See* CV Doc. 12.

[2] Citations to documents in the underlying criminal case will be "CR Doc. ___", and to documents in the instant matter "CV Doc. ___".

must liberally construe a pro se litigant's pleadings and hold them to a less stringent standard than pleadings drafted by an attorney. *Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir. 1991). I have done so here and have determined that no such evidentiary hearing is warranted, as the Motion, files and records in this matter conclusively show that Petitioner is not entitled to relief. I am comfortable ruling without taking additional testimony or evidence.

After meticulously reviewing the record, and in thorough consideration of Petitioner's arguments, the Court finds that equitable tolling does not save Petitioner's untimely filing, and that Petitioner has procedurally defaulted his claim. The Court recommends that the District Judge DENY Petitioner's second-or-successive § 2255 motion.

SUMMARY OF THE PARTIES' BRIEFING

In his § 2255 motion, Petitioner claims that his convictions and sentence pertaining to his no contest and guilty pleas to Counts 14, 15 and 16 of the Indictment are constitutionally invalid in light of the Supreme Court's decision in *Sessions v. Dimaya*.[3] CV Doc. 6 at 1. Petitioner argues that (1) *Dimaya* is retroactively applicable to his case, (2) equitable tolling of the relevant statute of limitations applies, (3) he can demonstrate cause and prejudice for his procedural default, and (4) he can meet the miscarriage of justice standard under the actual innocence exception. *Id*.[4]

---

[3] 138 S.Ct. 1204 (2018).

[4] The briefing goes beyond the traditional "motion → response → reply". After Petitioner initially filed his motion on May 13, 2021, along with a memorandum in support, *see* CV Doc. 2, Petitioner sought leave to amend his motion, CV Doc. 5, and prior to the Court's ruling on this motion, he filed an "Amended and Supplemented Memorandum…" CV Doc. 6. After the Court granted Petitioner's earlier motion, CV Doc. 8, Petitioner filed another amendment, this time styled "Addendum to Hahn's Supplemented and Amended Memorandum…" CV Doc. 9. The United States filed its Response in Opposition, CV Doc. 15, and Petitioner submitted his "Objections and Reply…" CV Doc. 20. Not satisfied with the state of his briefing, Petitioner also submitted his "Precautionary Motion to Amend or Supplement Section 2255 Motion," providing additional argument on the relevant background legal environment. CV Doc. 21. All told, Petitioner's motions, addenda, memoranda, objections and precautionary motion to supplement amount to more than 150 pages.

Respondent argues that Petitioner's motion fails because he cannot show, by a preponderance of the evidence, that the underlying crime upon which Counts 14-16 are based—criminal sexual contact of a minor in violation of N.M.S.A. §30-9-13—was classified as a crime of violence by the sentencing court under the residual clause of 18 U.S.C. §16(b).  CV Doc. 15 at 5-12.  Respondent submits that Petitioner has failed to direct the court to the relevant legal background environment in 2001, and as a result Petitioner can't show that the sentencing court relied on the unconstitutionally vague residual clause of § 16.  *Id.* at 9-10.  Respondent also argues that the motion fails because it is untimely, and that equitable tolling does not excuse Petitioner's late filing since he didn't pursue his rights diligently and no extraordinary circumstance prevented him from meeting his filing deadline.  *Id.* at 12-15.  Furthermore, Respondent submits that the actual-innocence exception does not apply in Petitioner's case, as Petitioner doesn't show that he is both factually and legally innocent of the charges, or that he is actually innocent of the charges equally or more serious and which the government dismissed as part of the plea agreement.  *Id.* at 16-17.

By way of his reply, Petitioner admits that there is no indication in the record that the sentencing court conducted any analysis of § 30-9-13, either under 18 U.S.C. §16(a) or (b).  CV Doc. 20 at 2.  Nonetheless, Petitioner submits that an analysis of the relevant background legal environment demonstrates that the sentencing court must have found that § 30-9-13 was a crime of violence under §16(b).  *Id.* at 2-8.  Petitioner also concedes that his motion was filed outside of the limitation period, but argues that the equitable tolling doctrine affords him relief.  *Id.* at 9.  Petitioner reiterates that the actual innocence doctrine applies to his case, since the underlying state crime is not a crime of violence and therefore he could not have been found guilty of 21 U.S.C. § 841(b)(7) as charged in Counts 14-16.  *Id.* at 9-10.  Finally, Petitioner argues that there

3

were no other charges that were dismissed that were "more serious" than Counts 14-16. *Id*. at

11-12.

PROCEDURAL BACKGROUND

The instant case represents the latest chapter of two decades of litigation surrounding Mr.

Hahn's cases in the federal courts. First, in early 2000, Mr. Hahn was arrested and charged with

marijuana manufacture and firearm charges, and in December 2000, after jury trial, he was

convicted on all charges. *See* CR 00-00082 JAP (Special Verdict), Doc. 106. Pursuant to the

underlying investigation in that case, and in particular the execution of several search warrants, a

separate grand jury indicted Mr. Hahn of additional charges including sexual exploitation of

minors (Counts 1-6), interstate transportation of child pornography (Counts 7-9), possession of

child pornography (Counts 10-11), and distribution of a controlled substance without the

knowledge of the recipient and with the intent to commit a crime of violence (Counts 12-16).

*See* CR 00-01344 JAP, Doc. 1. In March 2001, Mr. Hahn pleaded guilty to Counts 3-6, 15 and

16, and no contest to Count 14. CR 00-01344, Doc. 47 (Plea Agreement).

In June 2001, in CR 00-00082, the district judge sentenced Mr. Hahn to a total of 40

years incarceration. CR 00-00082, Doc. 6 at 4. This sentence was later reduced to ten years,

after the Fourth Circuit Court of Appeals granted Mr. Hahn's 28 U.S.C. § 2241 motion.[5] In CR

00-01344, the district judge imposed sentence of 240 months, or twenty years, to each of the two

counts to which Mr. Hahn pleaded guilty to be served concurrently to each other, and 52-months

to the count to which Mr. Hahn pleaded no contest to run consecutively, for a total sentence of

---

[5] Resentencing in CR 00-00082 occurred on September 24, 2020, at which time Hon. James A. Parker imposed a
sentence of: Count 1, 60 months; Count 2, 41 months to run concurrent to Count 1 for a total term of 60 months;
Count 3, 60 months to run consecutive to Counts 1 and 2 for a total term of 120 months. Resentencing took place
after the Fourth Circuit reversed the South Carolina district court's denial of Mr. Hahn's motion that he filed
pursuant to 28 U.S.C. § 2241; the Fourth Circuit remanded with instructions to vacate Mr. Hahn's 300-month
sentence as to Count 4. *See Hahn v. Mosely*, 931 F.3d 295 (4th Cir. 2019).

292-months.  *See* CR 00-01344, Doc. 77 (Judgment in a Criminal Case).  This sentence was

ordered to run consecutively to the sentence in CR 00-00082.  *Id.*

After his sentencing hearing in CR 00-01344, Mr. Hahn filed a direct appeal in the Tenth

Circuit, which appeal was dismissed after the appellate court found that Mr. Hahn was precluded

from appealing based on the appeal waiver in his plea agreement.  *See Unites States v. Hahn*, 359

F.3d 1315 (10th Cir. 2004) (en banc).  Thereafter, Mr. Hahn filed his first § 2255 motion, which

was dismissed by the district court, CR 00-01344, Docs. 93, 94, as was the appeal of that

dismissal.  CR 00-01344, Doc. 96.  Recently, Mr. Hahn sought leave in the Tenth Circuit Court

of Appeals to file a second or successive §2255 motion, based on the United States Supreme

Court's 2018 decision in *Sessions v. Dimaya* and its effect on his case.  After the United States

responded, the Tenth Circuit granted Mr. Hahn a certificate of appealability (COA), authorizing

him "to bring a claim that his convictions under 21 U.S.C. § 841(b)(7) are constitutionally

invalid because the New Mexico state offenses upon which those convictions were predicated do

not categorically qualify as crimes of violence under 18 U.S.C. § 16."  *See* CR 00-01344, Doc.

108 (May 13, 2021).  The instant motion followed, challenging the two concurrent 240-month

sentences as to Counts 15 and 16 of the Indictment, and the consecutive 52-month sentence

imposed as to Count 14.

## LEGAL STANDARDS

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was

rendered without jurisdiction, or that the sentence imposed was not authorized by law or

otherwise open to collateral attack, or that there has been such a denial or infringement of the

constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28

U.S.C. § 2255(b).  The standard applied to § 2255 motions is stringent and not every violation of

federal law can be remedied under § 2255. *United States v. Gordon*, 172 F.3d 753, 755 (10th Cir. 1999). "Only if the violation constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure' can § 2255 provide relief." *Id.* (citation omitted). The Court presumes the proceedings which led to defendant's conviction were correct. *See Parke v. Raley*, 506 U.S. 20, 29–30 (1992).

28 U.S.C. § 2244(d)(1) sets a 1-year period of limitation to file a motion pursuant to § 2255, and states that this 1-year period shall run from the latest of:

(A)   [….]
(B)   [….]
(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D)   [….]

The 1-year limitation period for filing a motion to vacate based on a right that was newly recognized by the Supreme Court runs from the date on which the Supreme Court initially recognized that right, not from the date on which the right was made retroactively applicable. *Dodd v. United States*, 545 U.S. 353, 357-60 (2005). The statute of limitations can be equitably tolled, *Holland v. Florida*, 560 U.S. 631, 649 (2010), but for equitable tolling to apply, Petitioner must demonstrate that he has diligently pursued his claims and his failure to timely file was caused by extraordinary circumstances beyond his control. *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001). A petitioner's lack of diligence may be excused based on his substantial claim of actual innocence. *Lopez v. Trani*, 628 F.3d 1228, 1231 (10th Cir. 2010). Actual innocence may toll the statute of limitations, *see McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), but an actual innocence claim fails when the argument establishes "legal innocence, as opposed to factual innocence." *Taylor v. Powell*, 7 F.4th 920, 939 n.8 (10th Cir. 2021) (citation

6

omitted).  The actual innocence exception is rare and will "only be applied in the extraordinary case," particularly to avoid a miscarriage of justice.  *Schlup v. Delo,* 513 U.S. 298, 321, 324 (1995) (internal quotation marks omitted).

Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review or by prior motion, the claim may be raised in habeas only if the petitioner can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent."  *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted).  "The [actual innocence] gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' "  *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (quoting *Schlup*, 513 U.S. at 316).  Furthermore, "[i]n cases where the Government has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges."  *Bousley,* 523 U.S. at 624.

ANALYSIS

A.  Petitioner's § 2255 Motion is Not Timely

The first matter that the Court addresses is whether Petitioner's § 2255 motion was filed within the 1-year statute of limitations.  The Court easily finds that it was not.  Petitioner's deadline to file was triggered by the Supreme Court's issuance of its opinion that held that the residual clause of § 16(b) was unconstitutionally vague.  *Dodd*, 545 U.S. at 357-60.  Because *Dimaya* was decided April 17, 2018, Petitioner had until April 17, 2019 to timely file his § 2255 motion.  Petitioner concedes he did not do this.  CV Doc. 20 at 9 ("Hahn concedes that his motion was filed outside the limitations period.").  Thus, given the untimely filing, Petitioner's

motion can only survive if the Court finds Petitioner is otherwise excused from dismissal on statute of limitations grounds.  The first ground raised by Petitioner is equitable tolling.

    B.  <u>Petitioner Is Not Entitled to Equitable Tolling of AEDPA's 1-Year Limitation Period</u>

    Petitioner aptly raises *Holland v. Florida* for authority that equity may permit a court to toll the statute of limitations to excuse an otherwise untimely § 2255 motion.  At its most basic, equitable tolling requires a finding that the petitioner acted diligently and that some extraordinary circumstance stood in the petitioner's way that prevented timely filing.  *Holland*, 560 U.S. at 649; *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (equitable tolling is available "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.").  Petitioner argues that a number of events conspired to prevent his timely filing, including (1) "Hahn's monumental five year pro se [habeas] effort" in CR 00-00082 to overturn the second § 924(c) conviction, while maintaining full time employment and a mental health counselorship, and enduring several lengthy institutional lockdowns as well as problems with receiving legal correspondence; (2) the complexity of the law regarding the statute of limitations; (3) inconsistent law regarding the retroactivity of *Johnson*,[6] *Davis*,[7] and *Dimaya*;[8] and (4) being abandoned by former counsel, the Federal Defender, and the state court; (5) the year-long transport between seven prisons where he lacked access to his legal documents; and (6) the impact of the COVID-19 pandemic.  CV Doc. 6 at 34-35.

---

[6] 559 U.S. 133 (2010).

[7] 139 S.Ct. 2552 (2015).

[8] 138 S.Ct. 1204 (2018).

The Court's review of these factors must keep sight of the requirement that they individually or collectively amount to an "extraordinary circumstance" that, despite Petitioner's diligent efforts, prevented Petitioner from filing within the statute of limitations.  "Extraordinary circumstance" is defined as "[a] highly unusual set of facts that are not commonly associated with a particular thing or event."  Black's Law Dictionary (11th ed. 2019).  "Extraordinary" is separately defined in pertinent part as "1. Beyond what is usual, customary, regular, or common… 4. Of, relating to, or involving an occurrence, esp. an incident or accident, that would not have been foreseeable to someone of normal prudence…5. Surpassing the common degree, measure, or allotment…"  *Id.*  It is noteworthy that Black's previously defined "extraordinary circumstances" with reference to "extenuating circumstances": "In contract law, unusual or extraordinary events *that prevent performance within specified time.*"  Black's Law Dictionary (6th ed. 1990) (italics added).

The Court is not persuaded that Petitioner's circumstances are extraordinary in quality—either individually or collectively—nor can the Court conclude that they justify the lateness of his May 31, 2021 filing, which was more than three years after *Dimaya* was decided.  Petitioner points to the fact that he was embroiled in a "monumental" effort to overturn a § 924(c) conviction in CR 00-00082.  But Petitioner's involvement in other litigation can't excuse him from recognizing and meeting his deadlines in the instant case, and Petitioner doesn't provide, nor is the Court aware of, any case that stands for this proposition.  Indeed, other cases demonstrate that ignorance of the law, misplaced reliance on a prison inmate law clerk, or a brief closure of the prison law library do not constitute extraordinary circumstances.  *Marsh*, 223 F.3d at 1220-21.  Nor does a petitioner's lack of access to federal statutes and state case law, *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998), or even his limited proficiency in the English

language.  *Yang v. Archuleta*, 525 F.3d 925, 928-29 (10th Cir. 2008).  Being busy in another

lawsuit is qualitatively no more "extraordinary" than the circumstances rejected by these cases.

In fact, the Court notes that Petitioner's successful efforts in that other lawsuit demonstrate that

Petitioner is well-versed and resourceful in the law, characteristics that cut *against* his claim that

his other litigation somehow prevented a timely filing here.

In addition to being involved in other litigation, Petitioner points out that he was working

full time, serving as a counselor, enduring occasional institutional lockdowns, and suffering

delays in receiving his legal mail.  CV Doc. 6 at 34-35.  While Petitioner argues these factors are

"extraordinary" and warrant equitable relief, the Court is unpersuaded, for none of these

circumstances are unusual in federal or state prison systems or unforeseeable to an inmate of

normal prudence.  But more importantly, Petitioner doesn't set forth *how* these occurrences

actually prevented his timely filing.  *Miller*, 141 F.3d at 978 ("In the final analysis, however, Mr.

Miller has provided no specificity regarding the alleged lack of access and the steps he took to

diligently pursue his federal claims.") (citation omitted).  Similarly, the fact that Petitioner's

former counsel were not responsive does not amount to an extraordinary circumstance,

especially given the fact that Petitioner has no constitutional right to counsel in this post-

conviction litigation.  *United States v. Norwood*, 557 Fed.Appx. 798, 802 (10th Cir. 2014).  And

as Respondent points out, the year-long transport between seven prisons did not commence

(March 18, 2020) until *after* the deadline to file (April 17, 2019), so that year on the move cannot

represent an impediment to Petitioner's timely filing.  CV Doc. 15 at 15.  Finally, Petitioner's

reliance on the ongoing pandemic is equally unpersuasive, especially given the fact that the

pandemic didn't begin until March 2020, or *after* Petitioner's deadline had passed.

Yet, even if these circumstances were viewed individually or collectively as extraordinary, Petitioner must still demonstrate his diligence in pursuing his rights. *Woodward*, 263 F.3d at 1142. Here, Petitioner provides little guidance as to what he did to reasonably comply with the law. Petitioner does state that in the months after *Dimaya* was decided, he attempted to contact his attorney, writing "several letters" that went unanswered. CV Doc. 6 at 38. Additionally, Petitioner wrote to the state public defender and to the state district court, which letters also were not answered. *Id.* Despite these letters, Petitioner explains that he finally recognized that *Dimaya* required that he file a § 2255 motion, once the Supreme Court issued its decision in *Davis* on June 24, 2019. CV Doc. 6 at 39, citing *Davis*, 139 S.Ct. 2319 (2019). At that point, Petitioner had recruited pro bono counsel who, along with the assistance of Petitioner's mother, helped Petitioner acquire necessary materials so that he could file a coherent § 2255 motion. "By this time however, through no fault of his own, the narrowly (and wrongly—in Hahn's view) interpreted statute of limitations under *Dodd*—had already expired." CV Doc. 6 at 39.[9]

The Court is unpersuaded that Petitioner acted with reasonable diligence in pursuing his § 2255 motion. While Petitioner attempted to contact former counsel to obtain materials, he never contacted the Court to indicate an intent to file a motion or otherwise alert the Court to impediments he was facing. The undersigned has no doubt that Petitioner was busy in 2018-20 as he successfully pursued his § 2241 motion in the Fourth Circuit and, after prevailing there,

---

[9] The Supreme Court majority in *Dodd* recognized that application of the rule could be "harsh" and could create "difficulty" for § 2255 applicants, but the Supreme Court concluded that it was "not free to rewrite the statute that Congress has enacted." 545 U.S. at 359. The Supreme Court continued: "The disposition required by the text here, though strict, is not absurd. It is for Congress, not this Court, to amend the statute if it believes that the interplay of ¶¶ 8(2) and 6(3) of § 2255 unduly restricts federal prisoners' ability to file second or successive motions." *Id.* at 359-360. Petitioner bemoans the sharp edges of the rule, and points to the "strenuous" dissent in the *Dodd* case. CV Doc. 6 at 32-33. But unless *Dodd* is reversed, its majority opinion controls, and this Court is not at liberty to disregard it, however "harsh" its application might be.

spent additional time preparing for resentencing.[10]  But Petitioner doesn't explain what steps he took to seek a certificate of appealability and timely file for relief in this Court, on this case.  The rule set forth in *Dodd* controls, and Petitioner has not demonstrated that he is relieved from it. As such, Petitioner's argument that he is entitled to equitable tolling of the 1-year period of limitation must fail.

### C. Even if Petitioner's Motion Had Been Filed Timely, Petitioner Cannot Overcome His Procedural Default

#### 1. Petitioner Admits that He Has Defaulted His *Dimaya* Claim

Alternatively, Petitioner's motion must be rejected if it is found that he defaulted his claim by not raising it below.  The general rule is that the federal courts will not consider a petitioner's claims for relief that were not adequately presented to underlying state or federal courts.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."); *United States v. Cook*, 997 F.3d 1312, 1320 (10th Cir. 1993) (procedural default involves a federal court's refusal to consider a § 2255 motion when a federal prisoner failed to properly pursue the claim on direct appeal).

To overcome procedural default, Petitioner must establish cause and actual prejudice, or that he is "actually innocent."  *Bousley*, 523 U.S. at 622.  The claim of actual innocence is joined with a procedurally defaulted claim to serve as "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup,*

---

[10] As noted above, resentencing occurred in CR 00-00082 on September 24, 2020.  Doc. 250 (Clerk's Minutes).

513 U.S. at 315 (internal quotation marks and citation omitted).  The gateway claim must "be credible" and requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *House v. Bell,* 547 U.S. 518, 537 (2006) (internal quotation marks and citation omitted).

Here, Petitioner admits that his *Dimaya* claim is procedurally defaulted, as he failed to raise this claim in his direct appeal.  CV Doc. 6 at 50 ("…Hahn submits that he can meet his procedural default…").  Nonetheless, Petitioner argues that he can establish both cause and prejudice to excuse such default.  *Id.* (Petitioner's procedural default is excusable "…because the constitutional vagueness claims that arose in *Johnson*, *Dimaya,* and *Davis*… were so novel that their legal basis was not available to him…").  The Court will next address Petitioner's arguments that he has overcome his procedural default.

2.  <u>Petitioner Is Unable to Establish Cause and Prejudice</u>

The Court recognizes that judgment in Petitioner's case was entered on August 28, 2001, CR Doc. 77, which was followed by Petitioner's direct appeal, CR Doc. 78, and then his first § 2255 motion, filed in June 2005.  CR Doc. 82.  Petitioner suggests that until *Dimaya* was decided in 2018, there would have been no reason to raise a vagueness challenge to § 16(b).  But Petitioner's argument is contrary to Tenth Circuit precedent.  In *United States v. Richards*, the petitioner argued in a second § 2255 motion that the district court misapplied the sentencing guidelines by including the weight of drug manufacturing "wastewater" in determining his base offense level.  5 F.3d 1369, 1370 (10th Cir. 1993).  In habeas proceedings, the district court agreed, prompting the government to argue on appeal that the petitioner was procedurally barred from raising the issue since he did not raise it on direct appeal or in his first § 2255 motion.  *Id.* In response, the petitioner argued that he did not have a reasonable basis to make his wastewater-

weight claim earlier, since the legal basis for that claim was so novel.  *Id.*  The Tenth Circuit

rejected petitioner's argument.  "The mere fact that others had not raised this issue first is not

sufficient cause. '[T]he question is not whether subsequent legal developments have made

counsel's task easier, but whether at the time of the default the claim was 'available' at all.' "  5

F.3d at 1371 (citing *Smith v. Murray,* 477 U.S. 527, 537 (1986)).  The Tenth Circuit determined

the wastewater-weight argument was "available," vacated the district court's order granting the

petitioner's § 2255 motion, and reinstated the original sentence.  *Id.* at 1372.

      Here, Petitioner notes that two years *after* he filed his first habeas motion, in 2007, the

Supreme Court rejected a vagueness challenge to the residual clause of the Armed Career

Criminal Act (ACCA), *see James v. United States*, 550 U.S. 192 (2007), and then again four

years later in *Sykes v. United States*, 564 U.S. 1 (2011).  CV Doc. 6 at 51.  The Court

understands Petitioner's argument to be that, since there were no reported decisions regarding the

residual clause (either of the ACCA or of § 16(b)), Petitioner would not have had reason to raise

that argument in his direct appeal, let alone in his first habeas motion.  Yet, the very cases relied

upon by Petitioner to justify his procedural default—*James* and *Sykes*—demonstrate that the

argument and principle to raise a challenge to § 16(b) were available to him at the time that he

filed his first habeas motion.[11]  As noted by the Tenth Circuit in *Richards*, "[b]oth the argument

and the principle on which it rests therefore were available to [the petitioner].  His belief that it

was unlikely to succeed does not excuse his failure to raise the issue." 5 F.3d at 1371.  Petitioner

---

[11] *James* was decided by the Eleventh Circuit in November 2005.  *United States v. James*, 430 F.3d 1150 (11th Cir. 2005).  The underlying criminal prosecution of Mr. James was commenced in June 2003 in the Middle District of Florida.  *See United States v. James*, No. 03-cr-00072 (M.D. Fla.).

For its part, *Sykes* was decided by the Seventh Circuit Court of Appeals in March, 2010, having been briefed and argued in the circuit court 2009.  *See United States v. Sykes*, 598 F.3d 334 (7th Cir. 2010).  The Indictment in that case was filed on June 18, 2008 in the Southern District of Indiana.  *See* 2008 WL 8097093.

could have challenged the constitutionality of § 16(b)'s residual clause before *Dimaya* found § 16(b) unconstitutionally vague, certainly at the time he filed his first § 2255 motion in 2005. Accordingly, the Court concludes Petitioner is unable to establish cause to excuse his procedural default.[12]

>  3.  <u>Petitioner's Claim That He Is Actually Innocent, And The Argument That Actual Innocence Results Because The District Court Relied On The Residual Clause, Is Unsupported In Fact And Law</u>

Despite being unable to show cause and prejudice, Petitioner may still overcome his procedural default if he can demonstrate his "actual innocence." *Bousley*, 523 U.S. at 622 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  In order to establish actual innocence, Petitioner must demonstrate that, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup,* 513 U.S. at 327-328.  The Supreme Court has thus far declined to extend the actual innocence exception to noncapital cases.  *See Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("We are asked in the present case to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. We decline to answer the question in the posture of this case….").  Because this limitation doesn't explicitly foreclose the actual innocence exception to noncapital litigants in post-conviction proceedings, the Court will address whether Petitioner can avail himself of this "gateway."

Here, Petitioner doesn't present new "evidence" to establish his actual innocence and overcome his procedural default, but he asserts his innocence by claiming that a subsequent ruling from the Supreme Court invalidates his convictions because the district court at his

---

[12] *Bousley* confirms that a procedurally defaulted claim can only be raised in habeas "if the defendant can first demonstrate [ ] 'cause' *and* actual 'prejudice…'"  523 U.S. at 622 (italics added).  *Bousley* confirms that both cause and prejudice need be shown.  *See Francis v. Henderson*, 425 U.S. 536, 542 (1976) (requiring "not only a showing of 'cause' for the defendant's failure to challenge the composition of the grand jury before trial, but also a showing of actual prejudice").  As Petitioner fails to demonstrate cause for his default, the Court need not assess whether he demonstrates prejudice.

sentencing relied on a statute that has since been found unconstitutionally vague.  CV Doc. 6 at

21 ("…the only way Hahn's convictions under § 841(b)(7) qualify as a crime of violence is

under the defunct and unconstitutionally void for vagueness residual clause of § 16(b).").

Petitioner asserts that the *Dimaya* decision results in his "factual" innocence, CV Doc. 6 at 45,

since the underlying state crime could only qualify as a "crime of violence" through application

of § 16(b), and because *Dimaya* holds this statute unconstitutionally vague, the government can't

prove one of the necessary elements of 21 U.S.C. § 841(b)(7).  *See* CV Doc. 6 at 45 ("If Hahn

does not have a requisite crime of violence as defined under § 16, then it necessarily follows that

there was no factual basis to sustain an essential element of the § 841(b)(7) charge…").

The road Petitioner must follow here is steep and very narrow.  First, the record in this

matter disavows Petitioner's factual innocence of Counts 14-16 of the underlying indictment,

and Petitioner pleaded guilty and no contest to having violated 21 U.S.C. § 841(b)(7),

presumably based upon the strength of the evidence.[13]  Second, to establish his "actual

innocence," Petitioner would have this Court conclude that the district judge at sentencing

necessarily relied upon § 16's residual clause in finding a crime of violence, of which Petitioner

admits there is no evidence.  CV Doc. 20 at 2 ("[M]ay the record reflect that there is no

indication in the record of the sentencing court conducting any analysis of NMSA § 30-9-13 to

evaluate whether it satisfied either the elements- or residual clause of Section 16.").  Third,

Petitioner recognizes that, in the Tenth Circuit, whether "actual innocence based on a new

---

[13] The evidence seized from Petitioner's residence as well as off-site storage units included, among other items, dozens of videotapes depicting Petitioner in the act of raping young boys who appeared to have been sedated; a prescription for Rohypnol (Flunitrazepam, the so-called "date rape drug") issued to Petitioner by a Mexican doctor in Tijuana, Mexico; video evidence that Petitioner traveled to Mexico to engage in sexual acts with minors; numerous videos and images of child pornography; various interviews with numerous adolescent victims describing their encounters with Petitioner.  *Sealed Presentence Investigation Report*, CR 00-1344 JP.  In addition, Petitioner admits in his motion that law enforcement seized videotapes "that were discovered to depict Hahn performing sexual acts on minors."  CV Doc. 6 at 2.

statutory interpretation or constitutional rule rather than such a claim based on new evidence can overcome § 2255's time limitations…" has not been decided.  CV Doc. 6 at 43, citing *United States v. Bowen*, 936 F.3d 1091, 1097 n.2. (10th Cir. 2019).  Petitioner suggests it is "high-time" for the District of New Mexico and the Tenth Circuit to "jump on the wave" and rule that reliance on a crime of violence definition in a statute subsequently ruled unconstitutional amounts, in and of itself, to a Petitioner's "actual innocence" under *Davis*.  CV Doc. 6 at 44.

To encourage the Court to "jump on the wave," Petitioner relies on authority from beyond the 10th Circuit.  *See* CV Doc. 6 at 41-45.  The problem in Petitioner's argument is that, in all the cases upon which he relies, the underlying predicate statute was construed to be a crime of violence under the (unconstitutionally vague) residual clause, whereas in Petitioner's case there is no evidence that the district judge relied on § 16(b).  Petitioner cites to *United States v. Reece*, 938 F.3d 630, 637 n. 3 (5th Cir. 2019), which determined that since federal bank robbery did not contain as an element the use, attempted use, or threatened use of physical force, it could only qualify as a COV under § 924(c)'s residual clause.  938 F.3d at 636.  Therefore, because the underlying federal convictions—conspiracy to commit bank robbery—relied on a constitutionally infirm residual clause, *Reece* determined that the convictions had to be set aside. *Id.  Reece* is inapposite *s*ince there is no evidence that the district judge here relied on § 16(b) in Petitioner's sentencing.

Petitioner also cites to *Lofton v. United States*, 920 F.3d 572 (8th Cir. 2019), where the Eighth Circuit determined that it was more likely than not that the sentencing court used the residual clause to classify the petitioner's criminal sexual abuse conviction as a violent felony. *Id*. at 575.  The *Lofton* court determined that the illegal sentence amounted to a "miscarriage of justice."  *Id*. at 576.  For purposes of our discussion, *Lofton* is also distinguishable based upon

the fact that the sentencing court there used the residual clause to qualify a predicate conviction as a crime of violence, which is not the case here.

Other cases relied upon by Petitioner are equally distinguishable as they all present scenarios where the petitioner was clearly convicted under the residual clause.  *See, e.g., In Re Hamoud*, 931 F.3d 1032 (11th Cir. 2019) (reversed since the petitioner made prima facie showing that his § 924(c) conviction may implicate the residual clause); *Duhart v. United States*, 2016 U.S. Dist. LEXIS 122220, 2016 WL 4720424 (S.D. Fla. Sept. 9, 2016) (granting habeas petition as "[i]t is clear that Duhart's conviction and sentence under § 924(c) relied on the residual clause portion of § 924(c)'s definition of 'crime of violence.' "), *rev'd by United States v. Duhart*, 752 Fed. Appx. 954 (11th Cir. 2019), *judgment vacated and remanded, Duhart v. United States,* 140 S.Ct. 100 (2019); *Royer v. United States*, 324  F.Supp.3d 719, (E.D.Va. Aug. 2, 2018) (finding that specific conduct related to the predicate offense did not involve "a substantial risk that physical force against the person or property of another may be used in committing the offense," thereby implicating the residual clause of § 924(c)).  These cases are inapposite, and they can't help Petitioner demonstrate that it is more likely than not that the district court sentenced him under § 16's residual clause.  Petitioner's actual innocence argument fails.

    4. <u>Petitioner Has Waived His Argument Regarding The Relevant Legal Background Environment, And Fails To Demonstrate The Sentencing Judge Relied On § 16(b) To Find The State Statute A Crime Of Violence</u>

It is Petitioner's burden to prove that the district judge relied on the residual clause of § 16 to find that the state statute—N.M.S.A. § 30-9-13, criminal sexual contact or a minor—is a crime of violence.  *See United States v. Driscoll*, 892 F.3d 1127, 1131 (10th Cir. 2018) (in § 2255 motions where an unconstitutional reliance on the § 924(e)(2)(B) residual clause is asserted, the burden is on the defendant to "prove that the sentencing court, more likely than not, relied on the

residual clause to enhance his sentence under the ACCA."). Here, Petitioner admits that there is no evidence in the record that the sentencing court did so. CV Doc. 20 at 2. Additionally, Petitioner fails to present argument regarding the relevant background legal environment until his Reply, and therefore has waived his argument on this matter.[14]

Even if the Court were to find that Petitioner has not waived his argument here—for example, Petitioner did discuss the categorical and modified categorical analyses to statutory construction, *see* Doc. 6 at 11-21—the Court concludes it would have been equally as likely that the district court utilize § 16(a) to construe § 30-9-13 as a crime of violence. The Tenth Circuit had not addressed the issue until 2003, or two years after Petitioner's sentencing hearing, s*ee United States v. Venegas-Ornelas*, 348 F.3d 1273, 1275 (10th Cir. 2003), while the Supreme Court's interpretation of "physical force" to mean "violent force" did not occur until 2010, almost a decade after Petitioner's sentencing. *Johnson*, 559 U.S. at 140. Petitioner fails to demonstrate that the sentencing court, more likely than not, construed the state statute as a crime of violence under § 16(b). *See United States v. Barela*, 768 Fed.Appx. 821, 824 (10th Cir. 2019) ("[The petitioner] has failed to direct the court to any such relevant legal background environment. And we decline to shoulder this burden for him."). Petitioner fails to meet his burden here.

---

[14] Arguments raised for the first in a reply are deemed waived. *United States v. Leffler*, 942 F.2d 1192, 1198 (10th Cir. 2019) ("In this Circuit, we generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived") (citation omitted); *also see Thompkins v. McKune*, 433 Fed.Appx. 652, 660 (10th Cir. 2011) (arguments raised for the first time in a traverse, a.k.a. habeas reply, are not properly presented to the district court, and will not be considered on appeal) (citation omitted). The Court notes that despite discussing the categorical and modified categorical approaches to statutory construction, in the 72 pages of his Amended and Supplemented Memorandum (CV Doc. 6), Petitioner nowhere discusses the relevant background legal environment of 2001. Petitioner addresses the background legal environment in his Reply, but only after the government raised the issue in its Response. *See* CV Doc. 20, 2-8. As such, those arguments are newly raised and are waived. *United States v. Redcorn*, 528 F.3d 727, 738 n.4 (10th Cir. 2008) ("Issues not raised in opening brief are deemed abandoned or waived.") (citing *Hanh Ho Tran v. Trustees of State Colls. in Colo*., 355 F.3d 1263, 1266 (10th Cir. 2004) (internal quotation marks omitted)).

5. <u>Nor Can Petitioner Show That He Is Actually Innocent Of Charges That Were Dismissed Pursuant To The Terms Of His Plea Agreement</u>

Finally, for the actual innocence gateway to apply, Petitioner must show that he is actually innocent of the charges that were equally or more serious to those that the government dismissed as part of the plea agreement. *Bousley*, 523 U.S. at 624 ("In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges."); *see also Taylor v. Powell*, 7 F.4th 920, 933 (10th Cir. 2021) (the Supreme Court's holding in *Bousley* prevents a petitioner from artificially narrowing the scope of the actual innocence inquiry through plea bargaining). Here, in exchange for Petitioner's guilty/no contest pleas, the government dismissed Counts 1 and 2 of the Indictment. While Counts 14-16 carry a maximum sentence of 20 years' imprisonment with no mandatory minimum, Counts 1 and 2—sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a)—carry statutory maximum sentences of 20 years, *but also* mandatory minimum sentences of 10 years' imprisonment. There is no question that the penalty provisions of Counts 1 and 2 are "more serious" than those associated with Counts 14-16, given their mandatory minimum sentences, notwithstanding Petitioner's arguments in his Reply. CV Doc. 20 at 11.

The Court concludes that the "actual innocence" gateway is not available to Petitioner. At its most basic, actual innocence means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623-24. Petitioner has presented no evidence that he is, in fact, actually innocent of distributing a controlled substance with the intent to commit a crime of violence against the three separate victims named in Counts 14-16 of his Indictment. The Court concludes, therefore, that Petitioner is not "actually innocent" and that his *Dimaya* claim is procedurally defaulted.

20

RECOMMENDATION

The record in this case conclusively shows that an evidentiary hearing is not necessary, and after carefully considering each of the claims presented, I conclude that Petitioner is not entitled to relief under 28 U.S.C. § 2255.  Therefore, I recommend that the District Judge DENY and DISMISS WITH PREJUDICE Petitioner's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence", CV Doc. 6, because it was not timely filed and because Petitioner's claims are procedurally defaulted.

Finally, the issuance of a COA is jurisdictional, *Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003), and one can issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Because I see no violation of Petitioner's constitutional rights, I also recommend that the Court not issue a COA.


JOHN F. ROBBENHAAR
U.S. Magistrate Judge

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**